UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>E. SILVA; A. PEDERSON; FNU MATTA; J. CERDA; KEN CLARK,<br><br>    Defendants. | Case No. 1:22-cv-204-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>ORDER DIRECTING CLERK TO ASSIGN TO DISTRICT JUDGE<br><br>(Doc. No. 2) |

      On February 17, 2022, Plaintiff filed a *pro se* prisoner civil rights complaint under 42 U.S.C. § 1983 accompanied by a motion for a preliminary injunction. (Doc. Nos. 1, 2). The preliminary injunction seeks to enjoin correctional officials from transferring Plaintiff from Corcoran, or to a general population housing, thereby removing him from long-term restricted secure housing unit ("SHU").[1]  (Doc. No. 2 at 5-7). Plaintiff paid the filing fee. (Receipt No. CAE1000050108). For the reasons discussed below, the undersigned recommends the district court deny Plaintiff's motion.

/////

---

[1] Plaintiff seeks similar relief in case number 1:21-CV-1372-JLT-HBK (E.D. Cal. 2021). In fact, in the other case Plaintiff filed a first amended complaint which include these same claims. Likewise, Plaintiff moved for a temporary restraining order or a preliminary injunction in his earlier case.

# I. BACKGROUND AND FACTS

**A. The Complaint**

The Complaint names five defendants: E. Silva, A. Pederson, FNU Mater, J. Cerda, and Ken Clark. (Doc. No. 1 at 1-3). The Complaint describes two unrelated excessive use of force incidents occurring in 2013 and 2021, respectively, a false disciplinary violations report, which was overturned, and alleges officials are retaliating against him in relation to the grievances he filed concerning these events by moving him from SHU to general population. (Doc. No. 1 at 5-6). Despite paying the filing fee, the Complaint remains subject to screening under 28 U.S.C. § 1915A due to Plaintiff's prisoner status.

The gravamen of the Complaint is that Plaintiff fears a future transfer from California State Prison at Corcoran or from his long-term restricted housing unit to a different correctional facility or to general population housing will expose him to harm. (*Id.* at 8-13). Plaintiff states he is a "sexual predator" having been convicted of indecent exposure and points out correctional officials place a "yellow place card" on his cell door, to alert everyone that he was convicted of indecent exposure. (*Id.* at 12). Plaintiff also claims he currently is being prosecuted for another indecent exposure incident. (*Id.* at 13).

Despite Plaintiff's history and status, on January 24, 2022, Sanchez-Madrigal, who is not a named defendant, approached Plaintiff and asked him if he wanted his long-term restricted housing to be suspended, thereby permitting a move to general population. (*Id.* at 8). Plaintiff told Sanchez-Madrigal he did not want to transfer and she "appeared to drop the idea." (*Id.*). A few days later Plaintiff attended an institutional classification committee hearing at which his long-term restricted housing status was improperly overturned. (*Id.* at 8-11). Plaintiff states his housing status could only be changed when he "no longer pose[s] a threat to the safety of any person or security of the institution." (*Id.* at 11). And Plaintiff argues he poses a threat because he assaulted "multiple sensitive need yard . . . prisoners in the past." (*Id.* at 13). Plaintiff also admits that he threatens other inmates with violence when he "senses antagonism." (*Id.*). Plaintiff argues his transfer is being done for retaliatory reasons because he should not be transferred to a short-term restricted housing cell given his previous attempted suicide in such a

cell and past experiences in which he "decompensates." (*Id.*).

### B. Preliminarily Injunction Motion

Plaintiff seeks to enjoin Defendants and their agents from transferring him to a different correctional institution or from his long-term restricted housing status to general population. (Doc. No. 2 at 5-6). On January 27, 2022, Plaintiff states Defendants suspended his disciplinarily segregation and referred him to transfer to general population at CSP-Sacramento or North Kern Valley State Prison. (*Id.* at 5). If housed in general population, Plaintiff reiterates the allegations in his Complaint stating he is both at risk and a risk to other inmates and correctional officials. (*Id.*). He believes he is at risk in general population due to indecent exposure charges, or for being a sexual predator. (*Id.* at 6). He claims he is a threat to other inmates as he states he will use violence to protect himself. (*Id.*). Based on the foregoing, Plaintiff alleges he is in "imminent risk of harm to either [his] personal safety" or risks losing any prospect of future release should he act to protect himself. (*Id.* at 7).

Addressing the factors to support a preliminary inunction, Plaintiff states he provided notice to Defendants in the form of an emergency grievance. (*Id.* at 8). Plaintiff requests that the Court waive the bond requirement because Defendants do not risk any monetary loss by the relief he seeks. (*Id.* at 8-9). Plaintiff contends he is likely to succeed on the merits because it is well known that sexual offenders face attack in prison and Defendants' action to transfer him to general population cannot be deemed reasonable. (*Id.*at 9). Plaintiff states the balance of hardship tips in his favor because its his safety and liberty in jeopardy. (*Id.* at 10).

### II.  APPLICABLE LAW

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary

3

injunctions, with the exception that preliminary injunctions require notice to the adverse party. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a).  Eastern District of California Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date.  Local Rule 231(a)-(b) (E.D. Cal. 2019).  A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A temporary restraining order is "an extraordinary remedy" and may be issued only if Plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiff bears the burden of clearly satisfying all four prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A TRO will not issue if Plaintiff merely shows irreparable harm is possible – a showing of likelihood is required. *Id.* at 1131.  The Ninth Circuit also has a second test, holding that a party requesting relief is entitled to a preliminary injunction if it demonstrates: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Zepeda v. U.S. Immigr. & Naturalization Serv*, 753 F.2d 719, 727 (9th Cir. 1985); *see also McKinney . Hill*, 925 F.2d at 1470 (9th Cir. 1991)(noting same).

The injunctive relief an applicant requests must relate to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").  Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff any relief. *Id.* at 636.

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials. In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr.*, 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit has observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000). The court's jurisdiction is "limited to the parties in this action" and the pendency of an action "does not give the Court jurisdiction over prison officials in general or over the conditions of an inmate's confinement unrelated to the claims before it." *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020). Further, state governments have "traditionally been granted the widest latitude in the dispatch of [their] own internal affairs." *Rizzo v. Goode*, 423, U.S. 362, 378 (1976) (citations omitted). This deference applies even more strongly when the court is asked to involve itself in the administrative decisions of a prison. *See Turner v. Safely*, 482 U.S. 78, 85 (1987); *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

### III. DISCUSSION

In applying the four factors, significant here is Plaintiff's inability to show that he is likely to suffer irreparable harm. Regarding the likelihood of the merits, Plaintiff's first retaliation and excessive use of force claim stems from events that occurred in 2013, and thus, appear time barred irrespective of whether the two-year or four-year statute of limitations apply. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations omitted); *see also Cantella v. Van De Kamp*, 486 F.2d 1128, 1132 (9th Cir. 2007) (citing Cal. Civ. Proc. Code § 335.1 in effect January 1, 2003)(since 2003, California has applied a two-year statute of limitations to § 1983 claims, but prior to 2003, a one-year limitations period applied) (other citations omitted); *see also Brown v.*

5

*Valoff*, 422 F.2d 926, 942-43 (9th Cir. 2005) (noting the statute of limitations is tolled while prisoner completed administrative exhaustion process); *Goods v. Baughman*, 2002 WL 844387 *1 (9th Cir. 2022)(noting district court properly dismissed action when plaintiff filed in excess of two-year statute of limitations and did not establish any basis for tolling an additional two years)(citations omitted).

Plaintiff's second retaliation claim is predicated upon an excessive use of force event that occurred on November 2, 2021. Plaintiff filed a grievance about the incident and was interviewed by a specialist from CDCR's regional office about the event on January 5, 2022. Shortly afterward, Sanchez-Madrigal, approached Plaintiff to inquire whether he was interested in terminating his SHU term to which he responded in the negative. On January 27, 2022, at his classification meeting, Plaintiff was advised that his SHU term was being suspended despite his objections. Plaintiff touts his convictions for indecent expose and his history of RVRs[2] as evidence that he should not be taken off SHU status and moved to general population. Plaintiff claims that the removal of his SHU status and placement in general population is at risk of harm in general population and is being done for retaliatory purposes.

As a general rule, prisoners have no expectation they will remain in any particular facility during their confinement and prison officials have broad authority to transfer prisoners from one facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (holding prisoners maintain no expectation that they will be confined in any particular prison); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding prisoners have no expectation that they will be confined in any particular facility). However, the transfer of a prisoner due to his protected activity can violate a prisoner's First Amendment rights. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). And filing a lawsuit or a grievance may constitute protected activity. *See Thibodeaux v. Belleque*, 320 F. App'x 818, 818-19 (9th Cir. 2009) (determining that retaliation due to a prisoner's threats of bringing lawsuits could create a colorable First Amendment retaliation claim). Thus, the Complaint appears to state a claim in this regard.

---

[2] "RVRs" stands for rules violation reports.

However, as to the imminent harm prong, Plaintiff has not shown he is likely to suffer irreparable harm to warrant the extraordinary exercise of immediate injunctive relief to enjoin Plaintiff's transfer. Although Plaintiff believes he is subject to transfer and may face injury based on his prior conviction of indecent exposure or sexual predator status, "'[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.'" *Mester v. Dickinson*, 2010 WL 1658472, *2 (April 23, 2010) (citing Caribbean *Marine Servc. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (other citations omitted)). A presently existing actual threat must be shown. *Id.* (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997), *cert. denied*, 523 U.S. 1020 (1998); *Caribbean Marine,* 844 F.2d at 674). And, aside from alleging the Defendants made the decision to transfer him in January of 2022, Plaintiff presents no *evidence* that transfer to another correctional institution or status change from long-term restricting housing is imminent. Other courts facing similar requests for injunctive relief to prevent correctional officials from transferring an inmate have recommended denying the motion for similar reasons. *See Blair v. CDCR*, 2016 WL 8673037 *2 (E.D. Cal. Dec. 9, 2016) (finding injuries speculative among other reasons); *James v. Wong*, 2017 WL 3588027 *3 (E.D. Cal. Sept. 21, 2017); *Jones v. Wong*, 2017 WL 3588027 (E.D. Cal. Aug. 21, 2017) (finding risk of future transfer too speculative to warrant injunctive relief). Further, correctional officials have a constitutional duty to protect an inmate from "violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1984).

Finally, Plaintiff names as Defendants the Warden, Correctional Counselors, and a Sergeant as Defendants. This Court must have personal jurisdiction over the parties to be enjoined. The Court may not enjoin defendants not yet served or before the Court. *Zepeda*, 753 F.2d 719, 727 (9th Cir. 1983). Here, screening remains due and no Defendants have received service of process. Thus, the Court lacks personal jurisdiction over the parties.

As noted in *Wolff v. McDonnell*, "[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking." *Id.* at 566. While prisoners are not stripped of their constitutional rights at the prison doors, there must be mutual accommodation between the

7

institutional needs and general application of Constitutional objectives and provisions. *Id.* at 556. Correctional officials' essential goals include maintaining institutional security, preserving order, and maintaining discipline of pretrial detainees and prisoners. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Where, as here, Plaintiff wishes the Court to interject itself into his transfer to a different correctional institution, or housing status change, the undersigned deems the decision best suited for correctional officials, particularly given Plaintiff's repeated taunting of past and future violence against other inmates and correctional officials. *See Id.* at 547-548 ("courts should ordinarily defer to [prison officials] expert judgment in such matters."). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of polices and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.*

Accordingly, it is **ORDERED**:

The Clerk of Court shall assign a district court judge.

It is further **RECOMMENDED**:

Plaintiff's motion for a preliminary injunction be DENIED.

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case under the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   April 14, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE