UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>E. SILVA; A. PEDERSON; FNU MATTA; J. CERDA; KEN CLARK,<br><br>Defendants. | Case No. 1:22-cv-00204-ADA-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>(Doc. No. 24)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Pending before the Court is Plaintiff's second Motion for a Preliminary Injunction. (Doc. No. 24, "Motion"). Plaintiff, a pro se prisoner who filed this action under 42 U.S.C. § 1983, seeks to enjoin correctional officials from transferring him to another correctional facility or into a different housing unit in his current facility. (*Id*. at 2). For the reasons discussed below, the undersigned recommends the district court deny Plaintiff's Motion.

## I. BACKGROUND AND FACTS

**A. Complaint and First Motion for Preliminary Injunction**

Plaintiff filed an initial complaint in this matter and simultaneously filed a motion for preliminary injunction. (Doc. No. 1). In the Complaint, Plaintiff names five defendants: E. Silva, A. Pederson, FNU Mater, J. Cerda, and Ken Clark. (*Id*. at 1-3). The gravamen of Plaintiff's Complaint is that prison officials at California State Prison – Corcoran ("CSP Corcoran"), where

he is currently housed, are retaliating against him for filing a grievance regarding a November 2, 2021 excessive use of force incident. In response, Plaintiff alleges that CSP Corcoran officials threatened to transfer him from his long-term securing housing unit to general population, to short-term restricted housing ("STRH") or to another prison. (*Id*. at 8-13).

Plaintiff also asserts due process and Eighth Amendment violations based on actions of the Institutional Classification Committee ("ICC"), which denied him a "genuine opportunity to be heard" at his hearing and wrongly recommended that he be referred for transfer. (*Id*.). The District Court denied Plaintiff's earlier filed motion for preliminary injunction because it found the alleged transfer and resulting injury too speculative, and because courts must defer to the "broad authority" of correctional officials to transfer inmates from one facility to another. (Doc. No. 10 at 6-8; Doc. No. 13). The undersigned has screened Plaintiff's operative complaint and found it failed to state any claim but afforded Plaintiff an opportunity to file an amended complaint. (Doc. No. 27).

**B. Second Motion for Preliminary Injunction**

In his second Motion, Plaintiff again seeks to enjoin Defendants from transferring him to general population or STRH at CSP Corcoran, or to a different correctional institution. (Doc. No. 24 at 5-6). In his Memorandum of Points and Authorities, Plaintiff asserts that he "is currently suffering an irreparable injury to his First Amendment right due to the chilling effect" of Defendants' threat to transfer him out of his current housing unit. (*Id.* at 8). Plaintiff also claims that due to his status as a sex offender he will be injured, or will injure others, if he is transferred to general population, which represents a threat of imminent irreparable injury. (*Id*. at 9-10).

In an attached declaration, Plaintiff recounts many of the facts previously alleged, and adds new facts regarding events that transpired since he filed his complaint. He reiterates his claim that on January 26, 2022, the ICC recommended his transfer to another facility in response to Plaintiff filing an excessive force grievance against Correctional Officer Munoz. (*Id*. at 23-24). On February 2, 2022, Classification Auditor P. Kennedy "inappropriately" approved Plaintiff's transfer to High Desert State Prison. (*Id*. at 25). On July 20, 2022, Defendant Matta, a correctional counselor at CSP Corcoran, informed Plaintiff that he had not yet been transferred

because he had multiple court proceedings scheduled within 60 days. (*Id*. at 26). Matta tried to persuade Plaintiff to "sign off" on a transfer to either general population or STRH at CSP Corcoran, but Plaintiff refused. (*Id*.). On his walk back from the "interview" with Matta, another inmate named Brewer attempted to stab Plaintiff after yelling that Plaintiff was an "I.E.X.er" (i.e. someone who had committed indecent exposure). (*Id*. at 26-27). The attack failed only because "[Plaintiff and Brewer are] both in segregated housing handcuffed and being escorted by officers." (*Id*.).

From October through November 2022, prison officials at CSP Corcoran took various steps to prepare for Plaintiff's transfer to CSP Sacramento, including packing Plaintiff's belongings, quarantining him for COVID-19 exposure, arranging transportation, and finalizing administrative approval for the transfer, which was scheduled to occur on October 24, 2022. (*Id.* at 27-28). On October 24, 2022, the date of his transfer, Plaintiff reported suicidal thoughts and kicked a correctional officer who was attempting to escort him for transport. (*Id*. at 28). After the incident, CSP Corcoran officials assigned Plaintiff to STRH, where he again reported suicidal thoughts and was placed on suicide watch for several days. (*Id*.). Plaintiff was then transferred to "Enhanced Outpatient Administrative Segregation," where he remains housed as of the filing of this Motion. (*Id*.). On January 26, 2023, the ICC met and again approved Plaintiff's transfer to CSP Sacramento or Kern Valley State Prison at the expiration of his determinate segregation term on April 21, 2023. (*Id*. at 29).

Plaintiff attaches as exhibits to his Motion the Rules Violation Report finding him guilty of battery on a peace officer (*id*. at 32-33) and the Classification Committee Chrono from January 26, 2023 approving his transfer to another prison (*id*. at 35-36). Because Plaintiff attaches these exhibits and incorporates them into his Motion, the Court may consider the exhibits when their authenticity is not questioned. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting at 12(b)(6) stage material properly submitted as part of the complaint may be considered without converting the motion to dismiss to a motion for summary judgment).

## II.  APPLICABLE LAW

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders. A

3

preliminary injunction is "an extraordinary remedy" and may be issued only if Plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Plaintiff bears the burden of clearly satisfying all four prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Manago v. Gonzales*, 2013 WL 1499323, at *2 (E.D. Cal. Apr. 10, 2013) (citing *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

A preliminary injunction will not issue if Plaintiff merely shows irreparable harm is possible – a showing of likelihood is required. *Id.* at 1131. The Ninth Circuit also has a second test, holding that a party requesting relief is entitled to a preliminary injunction if it demonstrates: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Zepeda v. U.S. Immigr. & Naturalization Serv*, 753 F.2d 719, 727 (9th Cir. 1985); *see also McKinney . Hill*, 925 F.2d at 1470 (9th Cir. 1991) (noting same).

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials. In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr*., 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit has observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000). The court's jurisdiction is "limited

4

to the parties in this action" and the pendency of an action "does not give the Court jurisdiction over prison officials in general or over the conditions of an inmate's confinement unrelated to the claims before it." *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020). Further, state governments have "traditionally been granted the widest latitude in the dispatch of [their] own internal affairs." *Rizzo v. Goode*, 423, U.S. 362, 378 (1976) (citations omitted). This deference applies even more strongly when the court is asked to involve itself in the administrative decisions of a prison. *See Turner v. Safely*, 482 U.S. 78, 85 (1987); *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

### III. DISCUSSION

As set forth more fully below, Plaintiff cannot show a likelihood of success on the merits, nor has he demonstrated that he would face imminent, irreparable injury without a preliminary injunction. Indeed, this Court has already determined that Plaintiff's complaint failed to state a claim. (*See generally* Doc. No. 27). Accordingly, the Court finds that Plaintiff cannot make a showing sufficient to justify the extraordinary remedy of a preliminary injunction.

**A. Likelihood of Success on the Merits**

Plaintiff's underlying claim alleges retaliation by CSP Corcoran officials, a due process violation because he was not allowed a "meaningful opportunity to be heard" at his ICC hearing, and an Eighth Amendment violation based on the ICC's decision to transfer him. (Doc. No. 1 at 8-13). Upon review, and as discussed below, the Court finds that Plaintiff has not shown a likelihood of success on any of his claims.

**1. Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). A retaliatory motive may be shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir. 2003);

*McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). Mere speculation that a defendant acted out of retaliation is not sufficient. *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

In his Complaint, Plaintiff states that he filed a grievance in November 2021 against the guard who assaulted him. He then describes a brief series of events leading up to the ICC convening on January 27, 2022 and recommending that he be referred for transfer. (Doc. No. 1 at 7-8). Other than presenting these events in sequence and inferring a connection, the complaint is devoid of facts indicating that the ICC decisions were motivated by Plaintiff's protected conduct. Plaintiff's mere speculation as to retaliatory motive is insufficient. *Wood,* 753 F.3d at 904. Plaintiff's Declaration is similarly devoid of facts indicating that the ICC's most recent transfer referral, on January 26, 2023, was motivated by retaliation against Plaintiff's protected conduct.

Nor can the Court determine that the ICC decisions to refer Plaintiff for transfer "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. The Classification Committee Chrono attached to Plaintiff's FAC outlines the Committee's rationale and considerations in recommending Plaintiff's transfer from his current housing assignment. (Doc. No. 24 at 35-36). Notably, the Committee concluded that "[Plaintiff's] release from segregated housing, at this time, does present an immediate threat to the safety and security of self/others; as well as the security of the institution." (*Id.*). It therefore recommended Plaintiff continue in maximum custody, remain in a single-occupancy cell, and maintain "walk-alone" yard access. (*Id.*). In considering possible transfer locations, the Committee noted the potential risk of transferring Plaintiff to Kern Valley State Prison, Facility C, because he has a "documented enemy" in Facility D, but that Facilities C and D "do not intermingle." (*Id*. at 36).

In other words, contrary to Plaintiff's allegation that the Committee recommended a transfer in order to place him in harm's way or to threaten him, the Committee exhibited significant concern for Plaintiff's safety in its decision making. The Chrono also states that "[Plaintiff] was informed that transfer recommendations are based on current case factors including eligibility for other programs. The committee recommendation is just that, a

recommendation, and due to Departmental needs at the time, the CSR[1] may elect to transfer to a location neither requested by the inmate nor recommended by the committee." (*Id.*). The record evidence contradicts Plaintiff's assertion that ICC acted out of retaliation, and instead reflects legitimate correctional goals. Accordingly, Plaintiff cannot meet the fifth element of a retaliation claim.

Further, as the undersigned has noted previously, prisoners have no expectation they will remain in any particular facility during their confinement, and prison officials have broad authority to transfer prisoners from one facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976). Given Plaintiff's own admissions of past and future violence against other inmates, the Court is inclined to defer to the expertise of prison officials, particularly where there are no facts indicating a retaliatory motive. *See Wolff v. McDonnell,* 418 U.S., 539, 547-548 (1974) ("courts should ordinarily defer to [prison officials'] expert judgment in such matters.").

### 2. Due Process Claims

Plaintiff also asserts that his due process rights were violated when he was denied "a genuine opportunity to be heard at [his] ICC hearing by predetermining their decision to suspend [his] SHU term and refer [him] for transfer to general population." (Doc. No. 1 at 9). However, the due process clause does not require a hearing be held before a prisoner can be transferred, even for punitive reasons. *Montanye v. Haymes,* 427 U.S. 236 (1976). Indeed, prisoners have no expectation they will remain in any particular facility during their confinement, and prison officials have broad authority to transfer prisoners from one facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976). Plaintiff does not even claim that he had <u>no</u> opportunity to be heard at the hearing, only that it was not a "genuine opportunity" because he believes the decision was "predetermin[ed]."

---

[1] Although not defined in the Chrono, the Court infers this refers to the Classification Staff Representative, a CDCR employee who reviews transfer recommendations and verifies eligibility. *See, e.g.*, *Arias-Maldonado v. Sisto*, 2011 WL 5402511, at *2 (E.D. Cal. Oct. 5, 2011), *aff'd*, 499 F. App'x 686 (9th Cir. 2012).

Plaintiff's suspicions about the ICC hearing are insufficient to establish a due process violation and therefore Plaintiff is not likely to succeed on the merits as to his due process claim.

### 3. Failure to Protect

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (quoting *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.1988)) (quotation mark omitted). Having confined persons with antisocial, often violent, propensities and prevented them from protecting themselves or seeking outside aid, "the government and its officials are not free to let the state of nature take its course." *Id.* "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials . . . ." *Id.* at 834. To establish a constitutional injury, two additional requirements must be met.

First, the alleged deprivation must be "objectively, sufficiently serious." *Id*. (quoting *Wilson v. Selter*, 501 U.S. 294, 303 (1991). For a claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. Second, the defendant-official must have a subjectively culpable state of mind, one of "deliberate indifference" to inmate health or safety. *Id*. This means that "the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference exists when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," actually draws such an inference, and "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 838, 847. The Eighth Amendment prohibits cruel and unusual *punishment,* and the infliction of such punishment requires at a minimum the conscious disregard of a known substantial risk of serious harm. *See id.* at 837-40.

A prison official may be culpable even if he does not know which specific prisoner may be assaulted or by whom, or even if the threat is generalized to all similarly situated prisoners. *See id.* at 843 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."). A prison official who

8

knows of a substantial risk may avoid liability if he or she "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. In evaluating the reasonableness of the response, courts should take "due regard" of the institutional constraints faced by prison officials who have the "'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Id.* at 845 (quoting *Spain v. Procunier,* 600 F.2d 189, 193 (9th Cir.1979) (Kennedy, J.)); *see also id.* ("[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause.").

Plaintiff's assertion of an Eighth Amendment violation based on the ICC's decision is unavailing. He asserts that "Defendants foreseeably placed me, a convicted sex offender, in imminent risk of serious and irreparable harm by referring me for transfer to general population." (Doc. No. 1 at 10). This is unsupported by the facts in his complaint and Motion. Plaintiff does not allege that he is currently "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. As of February 21, 2023, when he filed this Motion, he remained in enhanced outpatient administrative segregation, and the Classification Committee Chrono indicates he will remain in his current status until at least April 21, 2023. (*Id.*). Indeed, no transfer resulted from the ICC's recommendation in January 2022 and there is no indication that a transfer is imminent. As noted above, the ICC's most recent recommendation reflects careful attention to Plaintiff's safety, accounts for enemies at potential transfer facilities, and maintains Plaintiff's placement in a single cell at maximum security status, with little or no interaction with other inmates. (Doc. No. 24 at 36). Plaintiff states that another inmate attempted, unsuccessfully, to stab him while Plaintiff was returning from a meeting. (Doc. No. 24 at 26-27.) Even if true, this claim tends to show that CSP Corcoran officials are successfully protecting him from the threat posed by other inmates. (*Id.*). As Plaintiff notes, the only reason the assault failed is because of the protective measures taken by officials at CSP Corcoran. (*Id.*) ("[T]he only reason this assault failed is because were [sic] both in segregated housing, handcuffed and being escorted by officers."). (*Id.*). It also tends to suggest that transferring Plaintiff from CSP Corcoran—where he is known to have committed sexual misconduct—would

9

actually *lessen* his risk of physical harm.  In sum, Plaintiff's Motion and complaint fail to show that the conditions of his confinement pose a serious risk to Plaintiff's safety or that prison officials are deliberately indifferent to his safety.  Without such a showing, Plaintiff cannot establish a likelihood of success on the merits as to his Eighth Amendment claim.

### B. Imminent Risk of Irreparable Harm

It follows from the analysis above that Plaintiff has not shown he is likely to suffer irreparable harm without Court action.  Although Plaintiff believes he is subject to transfer and may face injury based on his prior conviction of indecent exposure or sexual predator status, "'[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.'" *Mester v. Dickinson*, 2010 WL 1658472, *2 (April 23, 2010) (citing Caribbean *Marine Servc. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (other citations omitted)).  A presently existing actual threat must be shown.  *Id.* (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997), *cert. denied*, 523 U.S. 1020 (1998); *Caribbean Marine,* 844 F.2d at 674).

Aside from alleging that Defendants recommended his transfer in January 2022 and January 2023, Plaintiff presents no evidence that transfer to another correctional institution or status change from long-term restricting housing will place him in imminent danger.  Notably, the ICC's most recent recommendation is to maintain him in a maximum-security status, a single cell, and using a "walk-alone" yard to minimize his interactions with others.  (Doc. No. 24 at 36). Other courts facing similar requests for injunctive relief to prevent correctional officials from transferring an inmate have recommended denying the motion for similar reasons.  *See Blair v. CDCR*, 2016 WL 8673037, at *2 (E.D. Cal. Dec. 9, 2016) (finding alleged risk of injury from future transfer speculative and insufficient to satisfy irreparable injury prong); *Jones v. Wong*, 2017 WL 3588027 (E.D. Cal. Aug. 21, 2017) (finding risk of future transfer too speculative to warrant injunctive relief).  For the reasons set forth above, the undersigned likewise finds insufficient grounds for granting Plaintiff's Motion.

Accordingly, it is **RECOMMENDED**:

Plaintiff's motion for a preliminary injunction be DENIED.

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case under the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:     March 28, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE