1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9          FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11  DEVONTE B. HARRIS,                    Case No.  1:22-cv-00204-ADA-HBK (PC)

12              Plaintiff,                FINDINGS AND RECOMMENDATIONS TO
                                          DISMISS CASE[1]
13       v.
                                          FOURTEEN-DAY OBJECTION PERIOD
14  E. SILVA, ET AL.,
                                          (Doc. No.  1)
15              Defendants.

16

17          Before the Court is Plaintiff's Complaint.  (Doc. No. 1).  For the reasons set forth below,

18  the undersigned recommends the district court dismiss the Complaint under § 1915A for failure to

19  state a claim.

20              **BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

21          **A.  Procedural History**

22          Plaintiff, a state prisoner proceeding pro se, initiated this action by filing a civil rights

23  complaint under 42 U.S.C. § 1983.  (Doc. No. 1).  He also simultaneously filed a Motion for

24  Preliminary Injunction.  (Doc. No. 2).  The District Judge denied Plaintiff's Motion for

25  Preliminary Injunction.  (Doc. No. 13).  Plaintiff later filed a second Motion for Preliminary

26  Injunction, (Doc. No. 24), and the undersigned issued Findings and Recommendations,

27  _____

28  [1]This matter was referred to the undersigned pursuant to 28 U.S.C. §636(b)(1)(B) and Eastern District of
    California Local Rule 302 (E.D. Cal. 2022).

1   recommending dismissal.  (Doc. No. 28).

2          The undersigned then screened the Complaint, finding it failed to state any cognizable

3   claim.  (Doc. No. 27 at 1).  Plaintiff was given three options to exercise within twenty-one (21)

4   days from November 14, 2022: (1) file a First Amended Complaint ("FAC"); (2) file a notice that

5   he intends to stand on his initial complaint subject to the undersigned recommending the district

6   court dismiss for reasons stated in the November 14, 2022 Screening Order; or (3) file a notice to

7   voluntarily dismiss this action, without prejudice, under Federal Rule of Civil Procedure 41(a)(1)

8   because no defendant had yet been served.  (*Id*. at 9-10).  In response, on April 18, 2023, Plaintiff

9   filed a Notice of Intent to Stand on his Complaint.  (Doc. No. 29).  He states, "Plaintiff Devonte

10  B. Harris elects to proceed on the complaint the Magistrate Judge purported find [sic] fails to state

11  a claim and refer it to the district judge."  (*Id*. at 1).

12          **B.  Summary of Operative Pleading**

13          In the Complaint, Plaintiff names five defendants: E. Silva, A. Pederson, FNU Matta, J.

14  Cerda, and Ken Clark.  (Doc. No. 1 at 1-3).[2]  Plaintiff is an inmate at California State Prison –

15  Corcoran ("CSP Corcoran").  Plaintiff states that on September 15, 2013, "several guards"

16  entered his cell and assaulted him.  (*Id*. at 5).  Plaintiff filed an excessive force complaint and

17  Defendant Pederson interviewed him.  (*Id*.).  He states that "one of the guards falsified a RVR[,]"

18  Defendant Silva found him guilty of it, and an associate warden later overturned it.  (*Id*. at 5-6).

19  Plaintiff does not elaborate on the significance of this incident.

20          Plaintiff then states that on November 2, 2021 an unnamed guard assaulted him and he

21  filed an excessive force complaint.  (*Id*. at 6).  On January 5, 2022, a specialist from Internal

22  Affairs interviewed him about his complaint, after speaking briefly with Defendant Cerda.  (*Id*. at

23  6).  On January 20, 2022, Correctional Counselor Sanchez-Madrigal approached Plaintiff and

24  asked if he would be open to a transfer to general population at another prison.  (*Id*. at 7.)

25  Plaintiff told her he "needed time to think about it."  (*Id*.).  She agreed to come back to him for an

26  answer the next day.  (*Id*.).  At that point, "[Plaintiff] realized retaliation motivated this transfer."

27
─────────────────
28  [2] The Court refers to the claim numbers ascribed by Plaintiff to the incidents and uses the pages numbers on the FAC as opposed to the page numbers that appear on the Court's CM/ECF system.

(*Id*.).  The next day, Plaintiff told the counselor he was not interested and "[s]he appeared to drop the idea." (*Id*. at 8).  On January 24, Sanchez-Madrigal approached Plaintiff's cell and informed him that "the Associate Director decided to suspend [Plaintiff's] SHU term over [his] objection." (*Id*.)

On January 27, 2022, the Institutional Classification Committee at CSP Corcoran met and "executed this predetermined plan to suspend my SHU term and refer me for transfer." (*Id*.). Plaintiff asserts that these decisions were made knowing that transferring him poses an increased risk to his safety and that of others. (*Id*. at 11-12).  He states that placing him in general population presents a heightened risk to his safety and the safety of others because he is a convicted sex offender, which creates "antagonism" between him and other inmates, and he tends to resort to violence when this occurs. (*Id*. at 11).  He also states that he faces a heightened risk when placed in Short-Term Restricted Housing because he "decompensate[s] in the sensory deprivation environment cells of STRH" and previously attempted suicide when placed there. (*Id*. at 12).

Plaintiff additionally alleges due process and Eighth Amendment violations based on the ICC denying him a "genuine opportunity to be heard" at his hearing and wrongly recommending that he be referred for transfer. (*Id*.).

For the reasons stated herein, the undersigned finds the Complaint fails to state any claim and recommends the District Judge dismiss the case.

## ANALYSIS AND APPLICABLE LAW

### A.  Screening Requirement and Rule 8

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

3

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules prohibit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. A litigant must file unrelated claims in separate lawsuits.

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

4

245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a pro se litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

### B. Duplicative Claims

Duplicative lawsuits filed by a plaintiff proceeding in forma pauperis are subject to dismissal as either frivolous or malicious under 28 U.S.C. § 1915(e). *See, e.g., Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *McWilliams v. State of Colo*., 121 F.3d 573, 574 (10th Cir. 1997); *Pittman v. Moore*, 980 F.2d 994, 994–95 (5th Cir. 1993); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988). A complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under § 1915. *Cato*, 70 F.3d at 1105 n.2; *Bailey*, 846 F.2d at 1021. "Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the comprehensive disposition of litigation." *Adams v. Cal. Dep't of Health Servs*., 487 F.3d 684, 692–93 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

"[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689 (citations omitted). "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Id.* at 688 (internal quotations and citations omitted). If the causes of action and relief sought are the same and involve the same parties or their privies, the duplicative lawsuit may be dismissed with prejudice. *Adams*, 487 F.3d at 688.

Plaintiff previously filed a 42 U.S.C. § 1983 complaint in this Court which names Defendants Munoz, Matta, Silva, Pederson, Cerda, and Medina and presents the same allegations as in the present complaint. *See* Am. Compl. filed July 22, 2022, Doc. No. 14 in E.D. Cal. Civil

1  Case No. 1:21-cv-01372-JLT-HBK.  That case alleges multiple claims of retaliation, including

2  one asserting that members of the Institutional Classification Committee retaliated against

3  Plaintiff for filing a grievance against Correctional Officer Munoz.  (*Id*. at 22-26).[3]  The remedies

4  sought in both cases are the same: various types of damages, plus injunctive relief to prevent his

5  transfer (Doc. No. 14 at 27 in E.D. Cal. Case No. 1:21-cv-01372-JLT-HBK; Doc. No. 1 at 15).

6  Further, four of the Defendants named in this Complaint are also named in the earlier action.

7  Plaintiff is repeating claims that were previously litigated; such claims may be considered abusive

8  and dismissed under § 1915.  *Cato*, 70 F.3d at 1105 n.2; *Bailey*, 846 F.2d at 1021.  Accordingly,

9  Plaintiff's retaliation claim is barred as duplicative.

10  **C. Retaliation**

11  Prisoners have a First Amendment right to file a grievance or civil rights complaint

12  against correctional officials.  *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009).  "Within

13  the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1)

14  An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

15  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

16  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

17  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  A retaliatory motive may be shown

18  by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as direct

19  evidence.  *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir. 2003); *McCollum v. Ca. Dep't of Corr.*

20  *And Rehab*., 647 F.3d 870, 882 (9th Cir. 2011).  Circumstantial evidence usually includes "(1)

21  proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant]

22  expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the

23  [defendant] for the adverse . . . action were false and pretextual."  *Id.* (quoting *Allen v.*

24  *Iranon,* 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).  Mere speculation that a

25  defendant acted out of retaliation is not sufficient.  *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir.

26

27  ───────────────
   [3] Munoz appears to be the guard referred to in the present Complaint, left unnamed, who assaulted
   plaintiff on November 2, 2021.  (Doc. No. 1 at 6).

28

6

1    2014) (citing cases).

2        Plaintiff states that he filed a grievance in November 2021 against the guard who

3    assaulted him.  He then describes a brief series of events leading up to the ICC convening on

4    January 27, 2022 and recommending that he be referred for transfer.  *See supra,* p. 4.  Other than

5    presenting these events in sequence and inferring a connection, the Complaint is devoid of facts

6    indicating that the ICC decisions were motivated by Plaintiff's protected conduct.  Plaintiff's

7    mere speculation as to retaliatory motive is insufficient to state a claim.  *Wood,* 753 F.3d at 904.

8        Nor can the Court determine that the ICC decision to refer Plaintiff for transfer did not

9    further a legitimate correctional goal.  Prisoners have no expectation they will remain in any

10   particular facility during their confinement, and prison officials have broad authority to transfer

11   prisoners from one facility to another.  *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *see*

12   *also Meachum v. Fano*, 427 U.S. 215, 225 (1976).  Given Plaintiff's own admissions of past and

13   future violence against other inmates, the Court is inclined to defer to the expertise of prison

14   officials, particularly where there are no facts indicating a retaliatory motive.  *See Wolff v.*

15   *McDonnell,* 418 U.S., 539, 547-548 (1974) ("courts should ordinarily defer to [prison officials']

16   expert judgment in such matters.").  "Prison administrators . . . should be accorded wide-ranging

17   deference in the adoption and execution of policies and practices that in their judgment are

18   needed to preserve internal order and discipline and to maintain institutional security."  *Id*.  While

19   Plaintiff infers improper motives among ICC members, the Court is not required to accept as true

20   conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western*

21   *Mining Council*, 643 F.2d at 624.  The Complaint is devoid of facts indicating the ICC was not

22   motivated by legitimate correctional goals in its decision.  Accordingly, the Complaint fails to

23   state a claim of retaliation.

24       **D.  Due Process**

25       Plaintiff also asserts that his due process rights were violated when he was denied "a

26   genuine opportunity to be heard at my ICC hearing by predetermining their decision to suspend

27   my SHU term and refer me for transfer to general population."  (Doc. No. 1 at 9).  However, the

28   due process clause does not require a hearing be held before a prisoner can be transferred, even

1    for punitive reasons. *Montanye v. Haymes,* 427 U.S. 236 (1976). Indeed, as noted above,

2    prisoners have no expectation they will remain in any particular facility during their confinement,

3    and prison officials have broad authority to transfer prisoners from one facility to another. *See*

4    *Olim*, 461 U.S. at 245-46; *see also Meachum*, 427 U.S. at 225. Plaintiff does not even claim that

5    he had <u>no</u> opportunity to be heard at the hearing, only that it was not a "genuine opportunity"

6    because he believes the decision was "predetermin[ed]." (Doc. No. 1 at 8). Because Plaintiff

7    does not have a constitutional right to due process regarding the decision to transfer him, his due

8    process claim fails.

9          **A. Eighth Amendment Violation**

10        The Eighth Amendment imposes a duty on prison officials "to protect prisoners from

11    violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994)

12    (quoting *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.1988)) (quotation

13    mark omitted). Having confined persons with antisocial, often violent, propensities and

14    prevented them from protecting themselves or seeking outside aid, "the government and its

15    officials are not free to let the state of nature take its course." *Id.* "It is not, however, every injury

16    suffered by one prisoner at the hands of another that translates into constitutional liability for

17    prison officials . . . ." *Id.* at 834. To establish a constitutional injury, two additional requirements

18    must be met.

19        First, the alleged deprivation must be "objectively, sufficiently serious." *Id.* (quoting

20    *Wilson v. Selter*, 501 U.S. 294, 303 (1991). For a claim "based on a failure to prevent harm, the

21    inmate must show that he is incarcerated under conditions posing a substantial risk of serious

22    harm." *Id.* Second, the defendant-official must have a subjectively culpable state of mind, one of

23    "deliberate indifference" to inmate health or safety. *Id.* This means that "the official knows of

24    and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference

25    exists when an official is "aware of facts from which the inference could be drawn that a

26    substantial risk of harm exists," actually draws such an inference, and "disregards that risk by

27    failing to take reasonable measures to abate it." *Id.* at 838, 847. The Eighth Amendment

28

1

2

prohibits cruel and unusual *punishment,* and the infliction of such punishment requires at a

minimum the conscious disregard of a known substantial risk of serious harm.  *See id.* at 837-40.

3

4

   A prison official may be culpable even if he does not know which specific prisoner may

be assaulted or by whom, or even if the threat is generalized to all similarly situated prisoners.

5

6

*See id.* at 843 ("[I]t does not matter whether the risk comes from a single source or multiple

sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons

7

8

personal to him or because all prisoners in his situation face such a risk.").  A prison official who

knows of a substantial risk may avoid liability if he or she "responded reasonably to the risk, even

9

10

if the harm ultimately was not averted."  *Id.* at 844.  In evaluating the reasonableness of the

response, courts should take "due regard" of the institutional constraints faced by prison officials

11

12

who have the "'unenviable task of keeping dangerous men in safe custody under humane

conditions.'"  *Id.* at 845 (quoting *Spain v. Procunier,* 600 F.2d 189, 193 (9th Cir.1979) (Kennedy,

13

14

J.)); *see also id.* ("[P]rison officials who act reasonably cannot be found liable under the Cruel

and Unusual Punishment Clause.").

15

16

   Plaintiff's assertion of an Eighth Amendment violation based on the ICC decision is also

unavailing.  He asserts that "Defendants foreseeably placed me, a convicted sex offender, in

17

18

imminent risk of serious and irreparable harm by referring me for transfer to general population."

(Doc. No. 1 at 10).  Plaintiff does not, however, allege facts showing that he is currently

19

20

"incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at

834.  As of February 17, 2022, when he filed this Complaint, Plaintiff's housing status remained

21

22

unchanged and there is no indication that a transfer was imminent.  When Plaintiff filed his

second Motion for Preliminary Injunction on March 1, 2023, he remained housed at CSP

23

24

Corcoran, (Doc. No. 24 at 1), and the ICC's most recent decision regarding his housing, in

January 2023, recommends that he remain in maximum-security status with a single cell, and use

25

26

a "walk-alone" yard to minimize his interactions with others.  (Doc. No. 24 at 36).  Plaintiff's

Complaint fails to show actual injury, that the conditions of his confinement pose a serious risk to

27

28

Plaintiff's safety, or that prison officials are deliberately indifferent to his safety.  Without such a

1   showing, Plaintiff fails to state an Eighth Amendment claim of cruel and unusual punishment.

2                        **CONCLUSION AND RECOMMENDATION**

3          Plaintiff was afforded an opportunity to cure the deficiencies in his Complaint but opted to

4   stand on his Complaint.  (See Doc. Nos. 27, 39).  In its screening order, the undersigned

5   instructed Plaintiff on the applicable law and pleading requirements.  Despite affording Plaintiff

6   an opportunity to correct the deficiencies, Plaintiff declined to do so.  (Doc. No. 29).  Thus, the

7   undersigned recommends the district court dismiss the Complaint without further leave to amend.

8   *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) *citing Ferdik v. Bonzelet,* 963 F.2d 1258,

9   1261 (9th Cir. 1992) (noting discretion to deny leave to amend is particularly broad where court

10  has afforded plaintiff one or more opportunities to amend his complaint).

11         Accordingly, it is **RECOMMENDED**:

12         1.  Plaintiff's Complaint be dismissed under § 1915A for failure to state a claim and the

13             action be dismissed.

14                           NOTICE TO PARTIES

15         These findings and recommendations will be submitted to the United States district judge

16  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14)**

17  **days** after being served with these findings and recommendations, a party may file written

18  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

19  Findings and Recommendations."  Parties are advised that failure to file objections within the

20  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

21  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

22

23  Dated:    May 4, 2023

24                                              HELENA M. BARCH-KUCHTA
                                                UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                     10